IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE STANDARD FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 2:05CV820-WC ) |
| ICA, INC., | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Standard Fire Insurance Company, brings this action against defendant ICA, Inc., alleging that defendant (1) failed to pay the plaintiff sums owing under an indemnity agreement and (2) failed to pay under common law indemnity, (3) failed to procure insurance, (4) committed fraud and suppressed known facts, and (5) negligently, recklessly and/or wantonly hiring, training and supervised its employees, agents, and adjusters who were involved in the assignment and adjustment of the Sanders' plaintiffs'[1] claim. (Doc. # 1, Complaint). The case is now before this Court on plaintiff's Motion for Partial Summary Judgment (Doc. #35, filed December 8, 2006) on Counts One, Three and Five of its Complaint. Upon consideration of the motion, and for the following reasons, this Court concludes that the motion is due to be GRANTED in part and DENIED in part. However, the Court will reserve final judgment

---

[1] Mr. and Mrs. Sanders, and their son, sued Standard Fire Insurance Company, The Pinckard Agency, Celia Courson and Marti Washing for damages associated with failure to adequately insure and pay claim under an insurance contract provided by Standard Fire Insurance Company.

1

pending resolution of the question of the total amount due under the indemnity agreement, including any determination as to attorneys' fees and interest.

## I. BACKGROUND

This Court adopts the Joint Stipulation of Fact (Doc. #52), submitted by the parties on March 2, 2007, and incorporates them herein by reference.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." This standard can be met by the moving party, in cases where the moving party bears the burden of proof at trial, by submitting affirmative evidence establishing every element of the moving party's claim. All the evidence, and the inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matsushita Electrical Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). With respect to issues (such as affirmative defenses when the plaintiff is the moving party) for which the nonmoving party bears the burden of proof at trial, the moving party may present evidence negating an essential element of the nonmoving party's claim or by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of his claim. An issue of fact is "material" if under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.,* 357 F.2d 1256 (11th Cir. 2004). In either case, the burden then shifts to the nonmoving party to

present evidence showing that there is a genuine issue of material fact. *See Castleberry v. Goldome Credit Corp.,* 408 F.3d 773, 785-786 (11th Cir. 2005). To satisfy this burden, the nonmoving party cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P.* 56(e). The moving party bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case," *Warrior Tombigbee Transport Co. v. M/V Nan Fung,* 695 F. 2d 1294, 1296 (11th Cir. 1983), and that it is entitled to judgment as a matter of law. *See Dominick v. Dixie National Life Insurance Co.*, 809 F.2d 1559 (11th Cir. 1987).

## III. DISCUSSION

> A.  *Is Standard Fire entitled to summary judgment as to Count One of its complaint for express contractual indemnity for certain acts and/or omissions of ICA in its adjustment of the Sanders' claim?*

The first issue raised by the plaintiff in its motion is whether it is entitled, as a matter of law, to be indemnified by defendant pursuant to an express agreement between the parties, the Independent Adjuster Service Agreement ("IA Agreement"). As to the interpretation of the essential elements of the contract made between the parties herein, the threshold issue in a federal diversity case is the choice of what law applies. Generally, a federal court in a diversity case is required to apply the law of the state in which it sits, unless there is an express contractual agreement to the contrary. *Goodwin v George Fischer Foundry Systems, Inc.,* 769 F.2d 708, 711, 712 (11th Cir. 1985). In the instant case, the IA Agreement, pursuant to its express language, is to be "construed, interpreted and the rights of the parties hereto determined in accordance with the laws of the State of Connecticut, without regard to the conflict of law principles thereof." (IA

Agreement, p. 7, Doc. #1, Exh. C). Since there is no strong public policy to override the express choice of law provision contained in the contract, *id.* at 712,[2] and defendant does not argue this issue in its response, this Court must look to the law of the State of Connecticut for evaluation of the IA Agreement.

      Regarding indemnification, the IA Agreement reads in pertinent part:

> The IA Firm and the IAs *shall defend, indemnify and hold Travelers,* it's parent company and its subsidiaries and affiliated companies and their respective officers, directors, employees and agents *harmless from and against all costs, claims, expenses, damages and liability which Travelers,* its parent company, its subsidiaries, its affiliated companies and/or their respective officers, director, employees and/or agents *may suffer or be required to pay arising out of any act or omission of the IA Firm, its employees, subcontractors or agents*, including but not limited to injuries to persons (including death) or damage to property in connection with IA Services rendered under this Agreement. (IA Agreement, p. 5; *emphasis supplied*).

      Plaintiff claims that it is "undisputed that the claims asserted by the Sanders' plaintiffs were 'connected with, had its origins in, grew out of, followed from or was incident to defendant ["ICA's"] adjustment of the Sanders' Hurricane Ivan claim."[3] The defendant does not argue this point in their brief in response.[4]

      The defendant argues, instead, that summary judgment should be denied because (1) a question of fact exists as to the extent of defendant's obligation under the indemnity agreement,

---

[2]Connecticut courts have consistently recognized a cause of action for express contractual indemnification. *Bakker v Brave Industries, Inc.,* 829 A.2d 928, 931 (Conn. 2002).

[3]Plaintiff's Brief in Support of Motion for Partial Summary Judgment, p. 29 (Doc. #33).

[4]*See*, Defendant's Brief in Response to Plaintiff's Motion for Partial Summary Judgment, pp. 29-33 (Doc. # 39).

(2) plaintiff did not adequately investigate the claims by the Sanders' plaintiffs, (3) the underlying suit sounded in breach of contract and bad faith on the part of plaintiff, and as such, (4) "should not automatically trigger liability on the part of [defendant] ICA." (Doc. #39, p. 30). None of these arguments go directly to the issue of whether the indemnity agreement, on its face, is triggered under the facts as agreed upon in this case.

Looking at the four corners of the document, the language is specific that the indemnity provision is triggered when "costs, claims, expenses, damages and liability..." are "arising out of any act or omission of the IA Firm, its employees, subcontractors or agents...." In the Joint Stipulation of Facts, (Doc. #52), the parties agree that defendant was assigned to adjust the claim brought by the Sanders against plaintiff Standard Fire[5] for hurricane damage to their home on September 16, 2004, and that two adjusters, hired by defendant ICA, made estimates on the Sanders' claim.[6] One adjuster, Tim Buhlert ["Buhlert"] evaluated the claim and estimated the damage to be $12,000-$15,000, though per the stipulations, it is undisputed that defendant ICA does not have the material associated with Buhlert estimates, nor were they forwarded to plaintiff Standard Fire for its review prior to payment of the Sanders' claim. Subsequently, a second adjuster, Mike Davis, reinspected the Sanders' home, and recommended payment in the amount of $2,461.34. (Doc. #52, pp. 6-13). Plaintiff spoke to Mr. Sanders on October 22, 2004, (Doc. 52, p. 10), and again after they received the check. (Doc. 52, p. 12-13). On November 3, 2004,

---

[5]Mr. and Mrs. Sanders reported the loss on September 16, 2004, and were insured under a homeowner's insurance policy issued by plaintiff. Plaintiff assigned the loss to defendant for inspection and adjustment on the same date. (Doc. #52, p. 2).

[6](Doc. #52, pp. 6-12). The facts are also clear that plaintiff had notice of the Sanders' dissatisfaction of defendant's handling of the claim on, at least, October 22, 2004. (Doc. #52, p. 10).

Mr. and Mrs. Sanders filed a lawsuit against plaintiff Standard Fire on fifteen different counts including, among others, a breach of contract action for the subsequent "low ball" estimate[7], bad faith in investigating, assault and battery by Michael Davis, and negligent and wanton hiring, training and supervision of Davis.

This Court finds that at least some of the allegations in the Sanders' Complaint [8] clearly arise out of the "act or omission of the IA Firm, its employees, subcontractors or agents...," and as such, they trigger the indemnity provision of the IA Agreement.

Defendant's arguments pertain primarily to the *extent* to which it is liable for *damages* under the IA Agreement. Again, looking to the face of the document, defendant is liable for "any act or omission of the IA Firm...." (IA Agreement, p. 5). Plaintiff herein would read this provision broadly to cover (presumably) all of the claims alleged in the Sanders' Complaint (Doc. #1, Exh. 2). Plaintiff would have this Court look at the terms "*arising out of*" without looking at the rest of the phrase "*any act or omission of the IA Firm.*" However, in construing a contract, this Court must consider the language and terms of the instrument as a whole, and interpret it, whenever possible, to effectuate the intent of the parties. *24 Leggett Street Ltd. Partnership v. Beacon Industries, Inc.,* 685 A.2d 305, 316-317 (Conn. 1996). By the clear

---

[7]Count Seven of the Sanders' Complaint (Doc. #1, Exh. 2, p. 8).

[8]In the original suit, the Sanders alleged fifteen Counts, including actions against Celia Courson and Marti Washing at the Pinckard Agency for misrepresentations made by them (Counts 1, 2 and 3), failure to properly train employee of Pinckhard Agency (Count 5), failing to pay contractual benefit owed (Court 6), fraud, suppression and conspiracy among the named defendants to the original action (Count 9), failure by the Pinckhard Agency to properly advise the Sanders' plaintiffs (Court 10), defamation (Count 11), breach of contract for Standard Fire's failure to fully investigate the claim (Count 9), as well as failure to pay for hail damage (Count 12).

reading of the language of the IA Agreement, the intent of the parties was to indemnify plaintiff for any *act* or *omission* of the IA Firm.

Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Levine v. Massey,* 232 Conn. 272, 277-78, 654 A.2d 737 (1995). Therefore, plaintiff's motion for summary judgment is granted as to the applicability of the IA indemnity clause in this case.

Defendant's arguments go to the issue of the *extent* of defendant's obligation under the indemnity agreement. It argues that the settlement extended to the Sanders was not a good faith reasonable settlement. (Doc. #46, p. 30). Defendant's arguments raise issues of material fact as to the underlying case. Since the Sanders' case was never adjudicated as to the merits of the Sanders' fifteen allegations, the issue of plaintiff's liability, defendant's liability, and the liability of other parties to the original suit, was never determined. The express language of the IA Agreement indemnity clause indicates that defendant "shall hold Travelers ...harmless from and against all costs, claims, expenses, damages and liability which Travelers...*may suffer or be required to pay*..." as a result of any act or omission of the IA Firm.

The plain language of the agreement indicates that plaintiff must prove a likelihood that the Sanders would have prevailed against plaintiff herein on the various underlying claims ("may suffer"), or be found actually liable (i.e., "required to pay"), and by associated findings of fact, that defendant herein was responsible for indemnity for at least part of the claims. This Court notes that there is no "right to settle" clause in the IA Agreement herein, and no clause that payment shall be "prima facie evidence" of liability and binding upon the indemnitor as is found

7

in other indemnity agreements.  *See, PSE Consulting, Inc. v Frank Mercede and Sons, Inc., et. al.*, 838 A2d 135, 145-146 (Conn. 2003) (where the Supreme Court of Connecticut discussed such a right to settle clause and found it valid and enforceable).  In addition, the language in the instant case is not as broad as that found in *Cirrito v Turner Construction Co.,* 458 A.2d 678, 679 (Conn. 1983), cited by plaintiff, and as that case instructs, "a contract court cannot add new or different terms." *Id.* at 680.  It is also noteworthy that defendant was never made a party to the lawsuit either by the Sanders or by plaintiff herein, Standard Fire.  Plaintiff could have brought the defendant into the case, and chose not to.  In the cases plaintiff cites, i.e., *Bakker v Brave Industries, Inc.,* 829 A.2d 928 (Conn. 2002); *Smith v Mitsubishi Credit of America, Inc.,* 721 A.2d 1187 (Conn. 1998), and *Star Electrical Contractors, Inc. v Stone Building Company, Inc.,* 836 So.2d 1071 (Ala. 2003)[9], the indemnitor had been cross-claimed into the original action, and it may have been prudent for plaintiff herein to also do so, but given that plaintiff did not, it left itself open to litigating matters that may have been best litigated in the original action,[10] or addressed in arbitration.[11]

Plaintiff also cites to the West Virginia case of *Valloric v Dravo Corp.,* 357 S.E.2d 207 (W.Va. 1987), for the proposition that it should only have to prove "some potential liability" and that defendant should be precluded from contesting plaintiff's liability to the Sanders' plaintiffs because the indemnitor in *Valloric* had an opportunity to participate in the settlement and refused

---

[9] We note this Alabama case is not precedential, only advisory.

[10] Much of the factual issues in this case are the same or similar to those in the original Sanders' action.

[11] Both parties admit in their Supplemental Briefs (Doc. # 59, 60, 61), prepared in response to the direct request by this Court, that they waived their right to participate in binding Arbitration concerning the indemnity provision (IA Agreement, p. 7) by the filing of the current action.

to do so. (Doc. #33, p. 32).  But the facts in *Valloric* indicate something quite different.  In that case, where the indemnitor was notified and *made a party to the original lawsuit* (this Court also notes such indemnitor did not participate in the defense), the indemnitee had the benefit of the "potential liability standard." *Id.* at 214.  The court went on to state: that even after the conditions of notice and opportunity to defend is satisfied, under a potential liability standard the indemnitee must still prove the following:  in his indemnity suit the indemnitee (1) must show that the original claim is covered by the indemnity agreement, (2) must demonstrate that the indemnitee was exposed to liability *which could reasonably be expected to lead to an adverse judgment*, and (3) that the amount of the settlement was reasonable.  *Id.* at 214.

> Potential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit.  The reasonableness of the settlement consists of two components which are interrelated.  The fact finder must look at the amount paid in settlement of the claim in light of the risk of exposure.  The risk of exposure is the probable amount of a judgment if the original plaintiff were to prevail at trial, balanced against the possibility that the original defendant would have prevailed. (*Citations omitted)* If the amount of the settlement is reasonable in light of the fact finder's analysis of these factors, the indemnitee will have cleared this hurdle.  *The fact that the claim may have been successfully defended by a showing of contributory negligence, lack of negligence or otherwise, is but a part of the reasonableness analysis and, therefore, subject to proof.  Id.* at 214 (*emphasis supplied).*

In *Valloric*[12] the indemnitor proceeded to trial, and it was found that the indemnitee was contributorily negligent, and as a result, the fact finder used the jury's finding to weigh against

---

[12]Again, we not that the West Virginia case is advisory and not precedent for this court. *But see, Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 2007 U.S. Dist. LEXIS 14252 (D. Fla. 2007), wherein it was stated: "As noted in the seminal case of *PSE Consulting, Inc.* (*supra,p. 8; citation omitted*), this showing shifts the burden of proof to the Defendants to show that Auto-Owners did not make the payment in good faith."

the reasonableness of the settlement.

In *PSE Consulting,* 267 Conn. at 301, the court held that the application of good faith and fair dealings is implicit in surety indemnity agreements and, as a result, that an indemnitee cannot act in "bad faith" when entering into a settlement agreement. *Id.* at 305.  The court further stated that, "[t]he evidence from which the jury reasonably could have concluded that National had acted in bad faith includes National's failure to conduct a sufficient investigation." *Id.* at 308.  In the instant case, defendant alleges that plaintiff did not adequately investigate the claim as to liability or injuries, and this at least raises the question as to plaintiff's motive for not doing so. "[F]ailure to conduct an adequate investigation of a claim. . .when accompanied by other evidence, reflecting an improper motive, properly *may* be considered as evidence of the surety's bad faith." *Id.* at 309-10 (*emphasis supplied*).

Finally, in the last case cited by plaintiff in its reply to defendant's brief (Doc. #46, p. 14), *Black v Goodwin, Loomis and Britton, Inc.,* 681 A.2d 293 (Conn. 1996), the court stated: "[i]n determining whether a settlement is reasonable, the jury is entitled to consider not only the damage sustained by the injured party, but also the likelihood that the injured party would have succeeded in establishing the insured's liability." *Id.* at 302.  *Black* actually works *against* plaintiff's claim that it should obtain judgment as a matter of law.  A settlement as to the Sanders' case should not be an end run to circumvent proof that the Sanders' would have won a judgment for actual damages but for the settlement.  Thus, this Court's finds that plaintiff must prove, at a minimum, that there was actual exposure (taking into account any contributory negligence), that the amount paid in the settlement was reasonable in light of the risk of exposure (proof of actual damage by the Sanders as a result of the negligence of act or omission by

defendant), and that it acted in good faith (including that they conducted an adequate independent investigation of the claim).

*B. Does defendant's duty to defend, as required by the indemnity agreement only apply to the issue of reasonableness, and hence, the ultimate amount of damages including attorney fees under the indemnity agreement; and did defendants fail to procure insurance?*

Plaintiff argues that defendant did not offer any defense in the underlying case.[13] Defendant contends there is a question of fact as to whether it participated in the defense of the underlying case. Neither plaintiff nor defendant addressed the issue of the amount of actual damages for failure to defend. Nor did either plaintiff or defendant address the specific requirements as to defendant's duty to defend, by citing specific case law as requested by this Court, in cases where the indemnitor was not brought in as a party to the original action.[14] These are obviously questions of fact as to this issue. Regardless, whether it participated in the defense or not, the duty to defend figures into the indemnity provision as to *damages* that may be recovered by plaintiff (attorney fees) if and when they are proved, assuming plaintiff can also prove the settlement was reasonable and made in good faith. As to this issue, there are also questions of fact raised, primarily, whether the actions that defendant did take were sufficient to rise to the level of a defense in a case in which it was not a party, and where the plaintiff, the insurer of the Sanders' home, had potential liability itself for its own negligence, if any.[15]

---

[13]This Court notes that plaintiff did not plead a separate allegation regarding failure to defend. Rather, this question goes to the issue of damages under the indemnification provision.

[14]This Court takes judicial notice of the Attorney/Client privilege and other procedural limitations as to non-parties.

[15]*See, Infra,* p. 11.

Plaintiff contends that defendant "flatly refused to participate in the defense or settlement of this case." (Doc. #33, p.31). However, the defendant's recitation of the facts, which must be taken in the light most favorable to it, presents a different picture.

Upon notice, the president of defendant's corporation, Troy Brown ["Brown"] responded immediately by addressing the correspondence by Raymond Stone of Standard Fire to retaining counsel and contacting their liability carrier, Houston Casualty Company ["Houston"]. (Doc. #39, pp. 19, 33). Correspondence went back and forth; defendant sent plaintiff a letter from counsel for Houston as to insurance coverage. While plaintiff alleges that defendant did not obtain insurance coverage (and, in fact, it is stipulated they did not add plaintiff as a named insured), defendant contends that this does not necessarily mean that defendant's general liability policy in force through Houston prohibits coverage of the claim of defendant's liability should plaintiff prevail against defendant in the instant case. Exhibit 16 of Plaintiff's evidentiary submission indicates that Houston Casualty Company is merely asserting its "reservation of rights" to dispute the claim; it is not an outright denial of coverage. In fact, Houston was representing defendant and was corresponding with plaintiff during the course of its litigation with Sanders. (Doc. #32, Exh. 2, p. 40). Brown testified in his deposition that Houston is the "errors and omissions" insurer for defendant. Brown turned all the documents over to the "carrier" and did "what my attorney asked me to do." (Doc. #32, Exh. 2, p. 39).

In addition, the "dec. [declaration] sheets" that were provided to plaintiff showed Travelers as a certificate holder. (Doc. #32, Exh. 2, p. 41). Brown also testified in his deposition that he tried but could not obtain the insurance endorsement required from "any" insurance company. (Doc. #32, Exh. 2, p. 41). Plaintiff claims in its brief that "they were left without the

protection of the insurance coverage for which it contracted." (Doc. #46, p. 24)  But, this is not necessarily bore out by the facts, and potential knowledge that plaintiff knew of the lack of insurance, and still assigned claims to defendant, may constitute a waiver of the contractual provision.[16]

     While plaintiff repeatedly demanded defense and indemnity in the Sanders' case, it does not indicate that its letters asked for any specific documents, including the adjuster's records. Also, plaintiff already had in its possession Adjuster Davis's records as they were turned over to plaintiff for the purpose of plaintiff paying the amount of $2,461.34 to the Sanders (Doc. 52, p. 12), and both parties claim that they did not possess Adjuster Buhlert's file (a question of fact). Noteworthy also, is that plaintiff failed to make further evaluation as to the allegations contained in the Sanders claim, even though the Sanders hired an expert witness who inspected the property on March 10, 2005.  Interestingly, plaintiff now uses the Sanders' expert witnesses' report as evidence in this case as to reasonableness of the settlement, instead of their own information from Davis that suggests otherwise.  Beside Davis' claims adjusting records, there was no evidence of another evaluation undertaken by plaintiff, at any time, begging the question as to what damage occurred between October, 2005 (Davis' evaluation), and March, 2006 (Sanders' expert witnesses' evaluation), during the time plaintiff refused to pay any additional monies.

     Plaintiff notified the defendant of several potential settlement amounts varying from

---

[16]Defendant in their Answer asserted the defenses of waiver, estoppel, release, accord and satisfaction. (Doc. #4, p. 7).  Waiver is the intentional relinquishment of a known right.  *Heyman Associates No. 1 v. Insurance Co. of State of Pa.*, 653 A.2d 122, 133-134 (Conn. 1995); *Multiplastics, Inc. v. Arch Industries, Inc.*, 348 A.2d 618, 621 (Conn. 1974).  Its existence is a question of fact for the trier.  *Brauer v. Freccia*, 268 A.2d 645, 649 (Conn. 1970).

$7,000,000 to $700,000, and finally, on August 11, 2005, offered to release defendant from future tort or indemnity claims if defendant and/or "its carriers" would contribute $500,000 to the last settlement offer of $700,000. (Doc. #39, p. 23). Counsel for defendant, presumably Houston, also wrote to counsel for Standard Fire as to mediation, indicating, "I do believe ICA's carrier is interested in unofficially participating in the mediation through some form of a contribution; however ICA does not intend to bear the brunt of the settlement. . ." (Doc. #39, p. 22). Plaintiff gave defendant (and its carrier) five days to decide as to whether it would contribute $500,000 as part of the settlement offer in exchange for plaintiff's relinquishment of liability. All of these facts, if proved, go to the reasonableness of the settlement and are relevant to whether plaintiff acted in the spirit of good faith and fair dealing with defendant. Of course, defendant's failure to participate more fully in the defense and settlement of this claim also weighs into this equation. It's failure to procure insurance, which also is a question of fact given the above asserted facts, only comes into play if the underlying insurer, Houston, does not pay upon the potential judgment (if plaintiff prevails herein) against defendant after a determination that the settlement was fair and reasonable. Therefore, this Court cannot reach this issue in this forum without Houston being joined in the suit and a determination being made as to its liability for the potential errors and omissions of defendant's adjusters.

> c.  *Did defendant ICA negligently, recklessly and/or wantonly hire, train and supervise defendant's employees, agents, and adjusters who were involved in the assignment and adjustment of the Sanders' claim?*

Plaintiff alleged that defendant ICA negligently, recklessly and/or wantonly hired, trained and supervised defendant's employees, agents, and adjusters who were involved in the

14

assignment and adjustment of the Sanders' claim.  Plaintiff alleged specific acts of incompetency, and that the defendant knew or should have known that Buhlert and Davis did not perform to plaintiff's standards.  Defendant contend that it is not responsible for the acts of "independent contractors," though the language contained in the indemnity clause cover acts or omissions by defendant's employees, *subcontractor* or agents. (IA Agreement, p. 5; *emphasis supplied*).  Defendant also alleges that its adjusters had previous experience and training, and that it performed background checks.  Bald allegations in the Sanders' Complaint– that Davis assaulted Sanders–do not rise to the level of fact in this case, and defendant indicated in its response that no report was ever made to the police or charges brought.  All of these arguments go to the issue of apportionment of the original parties' liability, and herefore, to the reasonableness of the settlement.  This question is one of fact, and this Court cannot find as a matter of law for plaintiff when there are factual issues in dispute.

c.	*Is plaintiff Standard Fire entitled to summary judgment as to Counts One, Three and Five of their Complaint?*

There is no issue of material fact to be tried as to the existence and potential enforcement of the indemnity clause in the instant case.  There is, however, a genuine issue of material fact as to the "costs, claims, expenses, damages and liability. . ." that arise out of any act or omission by defendant.  As to the latter, this Court reserves its judgment as to the *extent* of the costs, claims, expenses, damages and liability that arises out of the acts or omissions of defendant's *adjustment* of the Sanders' Hurricane Ivan claim.  It also reserves its judgment as to whether the settlement was reached in good faith and fair dealing, and was reasonable under the circumstances of these facts.  As to the other issues, previously discussed, there are issues of

material facts that must be proved at trial before judgment can be rendered.

## IV. CONCLUSION

Accordingly, this Court concludes that the plaintiff's motion for summary judgment is due to be GRANTED, as to the application as to the indemnity clause, but DENIED as to all other issues. This Court will reserve final judgment as to all other issues for the reasons stated above.

Done this 21[th] day of March, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE